IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KENNETH MALIK MILLER,
    Plaintiff,

v.      CIVIL ACTION NO. 19-CV-2456

TAMMY FERGUSON, *et al.*,
    Defendants.

**MEMORANDUM**

FILED
AUG 29 2019
KATE BARKMAN, Clerk
By_____Dep. Clerk

SLOMSKY, J.      AUGUST 28th, 2019

Plaintiff Kenneth Malik Miller, a prisoner currently incarcerated at SCI Phoenix, filed this civil action pursuant to 42 U.S.C. § 1983 based on allegations related to the destruction of inmate property during the transfer of prisoners from SCI Graterford to SCI Phoenix. He names as Defendants: (1) Tammy Ferguson, Superintendent of SCI Graterford and SCI Phoenix; (2) Mandy Sipple, Deputy Superintendent of SCI Graterford and SCI Phoenix; (3) "C.E.R.T. John Does," the employees responsible for the move; and (4) Secretary of Correction John Wetzel. Miller seeks to proceed *in forma pauperis* and has also filed a Motion for a Preliminary Injunction.[1] For the following reasons, the Court will grant Miller leave to proceed *in forma pauperis*, dismiss his Complaint without prejudice for failure to state a claim, and deny the Motion for Preliminary Injunction without prejudice to Miller asserting the claim as a new cause of action.

---

[1] Miller also filed a Motion for Extension of Time to comply with the Court's prior Order directing that he submit his prison account statement (ECF No. 6), which the Court will deny as moot because Miller was able to comply with the Order on a timely basis.

1

I.  **FACTS**[2]

Miller was previously incarcerated at SCI Graterford. As that prison was closing, inmates and their property were relocated to SCI Phoenix. Miller alleges members of a Corrections Emergency Response Team ("CERT") took custody of prisoners' property in connection with the move. Miller alleges generally that prisoners' property was destroyed, lost, or left in disarray. He also makes allegations that there were personal disputes among permanent staff at SCI Graterford/Phoenix and members of CERT. He claims that certain CERT members engaged in a systematic conspiracy designed to harm and frustrate the prisoners by damaging and destroying their personal property during the move to SCI Phoenix. This included religious items, legal material, family photos and personal care products. Miller claims that the "root cause of their actions [was] inherently racism and religious discrimination" because the John Does are "white males, ex military personnel, and live in the middle district, thus their motive was no other than hatred." (Compl. at 27.)[3]

Miller's allegations are at times stated generally, discussing the experiences of "prisoners" in conclusory and collective terms, rather than alleging how he himself was injured by the actions he describes. He also describes the actions of the named supervisory Defendants in general terms. For example, he asserts that Defendants Wetzel, Ferguson and Sipple, each of whom are supervisory officials at SCI Graterford/Phoenix, "are indirectly responsible [for the actions of the John Doe CERT Defendants] as they hired, and was overseer of these Defendants, and thus, they knew, or should have known about the crimes this group of officers were engaging

---

[2] The allegations are taken from Miller's Complaint. (*See* ECF No. 2.)

[3] The Court adopts the pagination assigned to the Complaint by the CM-ECF docketing system.

2

in, since hundreds of prisoners were complaining and hundreds of staff members witnessed and had to address this matter to the Defendants." (*Id.* at 24.)

Miller asserts claims under the Due Process clause of the Fourteenth Amendment based upon the destruction of property. (*Id.* at 33.) He also raises an Eighth Amendment claim based on "cruel and unusual treatment" and deliberate indifference, a racial hatred and religious discrimination claim, and a claim described as "In house post deprivation remedies to make amends."[4] (*Id.* at 34.) Miller attached to his Complaint an affidavit he signed, as well as affidavits from several prisoners who are not parties to this case, explaining that he filed grievances to remedy the loss of property but that the grievance process at SCI Phoenix was suspended and frustrated. (*Id.* at 47-59.) Grievances that Miller attached as exhibits to his Complaint reflect that he lost the following property in the course of the transfer: (1) legal materials; (2) family photos; (3) the manuscript for a self-published book; (4) religious articles; (5) sneakers; and (6) handcrafted art work. (*Id.* at 63-64.) It appears that a settlement of Miller's property loss claims resulted in his receiving $190 credited to his prison trust account, even though he valued the loss at $5,258.92. (*Id.* at 39-40.)

## II. STANDARD OF REVIEW

The Court grants Miller leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[5] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the

---

[4] The Court interprets this language to refer to failures in the prison grievance system.

[5] However, as Miller is a prisoner, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

3

same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory allegations do not suffice. *Id.* As Miller is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III. DISCUSSION

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). For the following reasons, Miller has failed to state a claim.

### A. Lack of Standing

Many of Miller's allegations pertain to general conduct that occurred during the transition, but which did not affect him. "[A] plaintiff must assert his or her own legal interests rather than those of a third party" to have standing to bring a claim. *See Twp. of Lyndhurst, N.J. v. Priceline.com, Inc.*, 657 F.3d 148, 154 (3d Cir. 2011) (quotations omitted)). Specifically, "[t]o have standing to bring a claim in federal court, a plaintiff must show, inter alia, that he has 'suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical.'" *Marin v. Leslie*, 337 F. App'x 217, 219 (3d Cir. 2009) (per curiam) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). To the extent Miller is raising claims based on conduct that did not

directly affect his property or cause him harm, and to the extent Miller is raising claims on behalf of other inmates, he lacks standing to pursue those claims.

## B. Shutting Down the Grievance System

Miller's allegations about the failures of the prison grievance system also do not state a claim. "Prison inmates do not have a constitutionally protected right to a grievance process." *Jackson v. Gordon*, 145 F. App'x 774, 777 (3d Cir. 2005) (per curiam); *see also Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009) (per curiam). Accordingly, although the ineffectiveness of the grievance system would affect the analysis regarding whether Miller properly exhausted his claims as required by the Prison Litigation Reform Act, it does not provide an independent basis for a constitutional claim. The Court will therefore dismiss any claims based on allegations related to the grievance system.

## C. Eighth Amendment Claims

The destruction of Miller's property also does not provide a basis for a claim under the Eighth Amendment. Conditions of confinement violate the Eighth Amendment's prohibition on cruel and unusual punishment if they satisfy two criteria. First, the conditions "must be, objectively, sufficiently serious" such that a "prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citations and internal quotation marks omitted). Second, the official responsible for the challenged conditions must exhibit a "sufficiently culpable state of mind," which "[i]n prison-conditions cases . . . is one of deliberate indifference to inmate health or safety." *Id.* The destruction of property does not equate to a sufficiently serious deprivation that would give rise to a claim under the Eighth Amendment. *See Payne v. Duncan*, Civ. A. No. 15-1010, 2017 WL 542032, at *9 (M.D. Pa. Feb. 9, 2017) ("Plaintiff's claim for destruction of property under

the Eighth Amendment does not constitute a deprivation of life's necessities."), *aff'd*, 692 F. App'x 680 (3d Cir. 2017); *Dean v. Folino*, Civ. A. No. 11-525, 2011 WL 4527352, at *3 (W.D. Pa. Aug. 22, 2011) (allegations regarding destruction of property did not state Eighth Amendment claim), *report and recommendation adopted*, 2011 WL 4502869 (W.D. Pa. Sept. 28, 2011). Accordingly, the Court will dismiss Miller's Eighth Amendment claims.

### D. Fourteenth Amendment Claims

Miller is also pursuing a due process claim under the Fourteenth Amendment based on the loss and/or destruction of his property. However, there is no basis for a due process claim because Pennsylvania law provides Miller with an adequate state remedy. *See Spencer v. Bush*, 543 F. App'x 209, 213 (3d Cir. 2013) ("'[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available.'" (quoting *Hudson v. Palmer*, 468 U.S. 517, 533 (1984))); *Shakur v. Coelho*, 421 F. App'x 132, 135 (3d Cir. 2011) (per curiam) (explaining that the Pennsylvania Tort Claims Act provides an adequate remedy for a willful deprivation of property). Accordingly, Miller has not stated a basis for a due process claim because state law provides him a remedy for his destroyed property. *See McNeil v. Grim*, 736 F. App'x 33, 35 (3d Cir. 2018) (per curiam) ("[E]ven if McNeil claimed that the prison grievance procedures were constitutionally inadequate, Pennsylvania's state tort law would provide an additional adequate remedy.").

Miller also appears to be raising race based equal protection claims under the Fourteenth Amendment. However, nothing in Miller's Complaint suggests that he was treated differently due to his membership in a protected class. Indeed, prisoners do not constitute a protected class

6

for Fourteenth Amendment purposes, *see Myrie v. Comm'r, N.J. Dep't of Corr.*, 267 F.3d 251, 263 (3d Cir. 2001), and Miller has not alleged that he was treated differently from others who were similarly situated. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008) (to state an equal protection claim on a "class of one" theory, "a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment"); *see also Faruq v. McCollum*, 545 F. App'x 84, 87 (3d Cir. 2013) ("To state a claim for race- or religion-based discrimination, [plaintiff] needed to show specifically that he received different treatment from that received by other similarly situated inmates." (citing *Williams v. Morton*, 343 F.3d 212, 221 (3d Cir. 2003)). To the contrary, the Complaint reflects that Miller is alleging that many inmates were subjected to the same or similar conditions of which he complains. Accordingly, Miller has not alleged a basis for an equal protection claim.

## IV. MOTION FOR PRELIMINARY INJUNCTION

In his Motion for Preliminary Injunction (ECF No. 7), Miller asserts that, following his filing of the Complaint in his case, he was told by unspecified prison officials that they will no longer be supplying origami paper for Miller's use in creating origami art and teaching origami to other inmates. (*Id.* at 4.) He seeks a preliminary injunction "to protect plaintiff against defendants retaliatory actions, their equal protection violation, their discriminatory conduct, their vindictive behavior, and their cruel and unusual treatment against plaintiff only because he grievanced [sic], exhausted and filed a civil rights complaint against defendants." (*Id.*) He alleges there is a substantial threat of irreparable harm if the injunction is not granted because his teaching origami to other inmates is "good for mental, psychological, emotional, spiritual and biological health, but its also good for plaintiff well being as well." (*Id.* at 8.) He also alleges

that teaching is his therapy and helps him cope. (*Id.*) Miller asserts that the harm he suffers outweighs any harm that granting the injunction may cause to the Defendants because origami is not threatening or harmful and there is no legitimate penological justification for the failure to supply the paper. (*Id.* at 10-11.) He alleges that the public interest favors granting the injunction because he creates art for family, friends, the sick, and schools. (*Id.* at 13.)

A party seeking the "extraordinary remedy" of a temporary restraining order or preliminary injunction must establish: "(1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004), *abrogation in patent cases recognized by Am. Beverage Corp. v. Diageo N. Am., Inc.* 936 F. Supp. 2d 555 (W.D. Pa. 2013) ; *Pileggi v. Aichele*, 843 F. Supp. 2d 584, 592 (E.D. Pa. 2012) ("The standard for granting a temporary restraining order under Federal Rule of Civil Procedure 65 is the same as that for issuing a preliminary injunction."). Moreover, in the prison context, a request for injunctive relief "must always be viewed with great caution because 'judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration.'" *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995) (quoting *Rogers v. Scurr*, 676 F.2d 1211, 1214 (8th Cir. 1982)). Preliminary injunctive relief is "not a tool for prisoners to use to regulate 'in every way, every day, the terms and conditions of plaintiff's confinement simply because they are "in court"' . . . ". *Stiel v. Fed. Bureau of Prisons*, Civ. A. No. 16-3832, 2017 WL 2656646, at *4 (D.N.J. June 19, 2017) (quoting *Muhammad v. Director of Corrections*, Civ. A. No. 07-375, 2009 WL 161075, at *1 (E.D. Cal. Jan. 22, 2009)). Thus, where a plaintiff requests an injunction that would require the Court to interfere with the administration of a prison, "appropriate

consideration must be given to principles of federalism in determining the availability and scope of equitable relief." *Rizzo v. Goode*, 423 U.S. 362, 379 (1976). The federal courts are not overseers of the day-to-day management of prisons and prison officials require broad discretionary authority as the "operation of a correctional institution is at best an extraordinarily difficult undertaking." *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974). Accordingly, prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that are needed to preserve internal order and to maintain institutional security. *Beard v. Banks*, 548 U.S. 521, 529 (2006); *Bell v. Wolfish*, 441 U.S. 520, 527 (1979).

Miller has not satisfied the standard for issuance of a preliminary injunction. First, as the Court has determined that his Complaint fails to state plausible claims as pled, he cannot show that he is likely to succeed on the merits of his claims. In any event, the subject matter of the Motion is not addressed in the Complaint. Second, while the Court understands Miller's desire to engage in teaching origami to other inmates, both as a benefit to them as well as himself, his inability to do so do to the lack of supplies is not sufficient to allege that he will suffer irreparable harm, that Defendants will not suffer greater harm, or that the public interest favors granting relief. Access to origami paper and teaching origami are not necessities of life and, therefore, Miller cannot assert a deliberate indifference claim based on unnamed prison officials denying him access to them. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (holding that, because prison officials must ensure that both convicted inmates and pretrial detainees receive adequate food, clothing, shelter, and medical care, they must "'take reasonable measures to guarantee [their] safety[,]'" (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)); *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992) (holding that a condition of confinement violates the Eighth Amendment only if it is so reprehensible as to be deemed inhumane under contemporary

standards or such that it deprives an inmate of minimal civilized measure of the necessities of life and that the conditions exist as a result of deliberate indifference by prison officials); *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981) ("Although job and educational opportunities diminished marginally as a result of double celling, limited work hours and delay before receiving education do not inflict pain, much less unnecessary and wanton pain; deprivations of this kind simply are not punishments.").[6]

## V. CONCLUSION

For the foregoing reasons, the Court will dismiss Miller's Complaint for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). *See Hernandez v. Corr. Emergency Response Team*, 771 F. App'x 143 (3d Cir. 2019) (per curiam) (affirming dismissal of amended complaint where inmate "alleged in his complaint that when he and all other prisoners were moved from SCI Graterford to SCI Phoenix, many prisoners' possessions were destroyed or damaged, including his legal materials"). However, Miller will be permitted to file an amended complaint in the event he can cure any of the defects in his claims. An appropriate Order follows.

**BY THE COURT:**

_Joel Slomsky_
JOEL H. SLOMSKY, J.

---

[6] To the extent that Miller may believe that the denial of his origami paper and ability to teach the art to other inmates was taken by prison officials in retaliation for his filing the instant case, he may assert that claim in a new lawsuit in which he names as defendants the prison officials who so acted to violate his rights.

10