IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KENNETH MALIK MILLER,<br>Plaintiff, | : | |
| v. | : | CIVIL ACTION NO. 19-CV-2456 |
| TAMMY FERGUSON, *et al.*,<br>Defendants. | : | |

## MEMORANDUM

**SLOMSKY, J.**                                                                       OCTOBER 3, 2019

Plaintiff Kenneth Malik Miller, a prisoner currently incarcerated at SCI Phoenix, filed this civil action pursuant to 42 U.S.C. § 1983 based on allegations related to the destruction of inmate property during the transfer of prisoners from SCI Graterford to SCI Phoenix. In a Memorandum and Order entered on August 30, 2019, the Court dismissed Miller's Complaint without prejudice and granted him leave to file an amended complaint if he was able to cure the defects the Court identified in his original pleading. The Court received Miller's Amended Complaint ("AC") on September 10, 2019. He again names as Defendants: (1) Tammy Ferguson, Superintendent of SCI Graterford and SCI Phoenix; (2) Mandy Sipple, Deputy Superintendent of SCI Graterford and SCI Phoenix; (3) "C.E.R.T. John Does," the employees responsible for the move; and (4) Secretary of Correction John Wetzel in their individual capacities. He has added as an additional Defendant Smart Communications ("Smart"). For the following reasons, the Court will dismiss the AC in part with prejudice and in part without prejudice, sever the claim against Defendant Smart, and grant Miller another opportunity to amend his claims.

I.  **FACTS**[1]

Miller was previously incarcerated at SCI Graterford. As that prison was closing, inmates and their property were relocated to SCI Phoenix. Similar to his original pleading, in the AC Miller alleges members of a Corrections Emergency Response Team ("C.E.R.T.") took custody of prisoners' property in connection with the move. Miller alleges that his property was destroyed, lost, or left in disarray. He contends that Defendants Wetzel, Ferguson and Sipple "orchestrated the removal and destruction of Plaintiffs['] personal property which consisted of constitutionally protected items." (ECF No. 11 at 13.) He also alleges that the C.E.R.T. members "were the henchmen that deliberately damaged, destroyed and disarranged legal and other protected properties of plaintiff by the consent of the above Defendants (Wetzel, Ferguson, Sipple) that hired and paid Defendants (C.E.R.T.) for this purpose." (*Id.* (parentheticals in original).) Miller asserts that Department of Corrections policies governing the packing of property and transfer of inmates were disregarded, his grievances resulted in a monetary settlement that Ferguson and Sipple failed to honor, and he was not compensated for his "constitutionally protected items." (*Id.* at 14.)

Miller asserts that the manuscript of an about to be self-published book he authored about jailhouse lawyering was destroyed in the move. (*Id.* at 15.) Miller contends that he has a First Amendment expression right in his manuscript and its deliberate destruction violated his rights. (*Id.* at 16.) He also alleges a First Amendment violation arising from art supplies and finished origami artwork that was destroyed (*id.* at 17-18), and from the destruction of a collage of historical family photographs (*id.* at 18). He alleges an Eighth Amendment violation arising

---

[1] The allegations are taken from the AC. (*See* ECF No. 11.)

2

from the destruction or loss of his orthopedic style shoes that he wore to alleviate pain from a pre-incarceration broken ankle. (*Id.* at 21.) He alleges the shoes constituted a life necessity and all Defendants acted with deliberate indifference to his health and safety. (*Id.* at 21-22.)

Miller alleges a Free Exercise claim arising from the deliberate destruction of religious items including his kufis, books, a prayer rug, and Islamic wall posters. (*Id.* at 22.) He asserts that there was no penological reason for his being denied these religious items, the denial of the items constituted an atypical hardship of incarceration, deprived him of due process, and constituted cruel and unusual punishment. (*Id.* at 23-24.) Miller asserts a First and Sixth Amendment claim based on the destruction of his legal property.[2] (*Id* at 25.) He also alleges that legal mail was opened outside of his presence, his attorney/client legal mail was photocopied, Defendants Wetzel, Ferguson and Sipple conspired with Defendant Smart, which Miller contends is an agent under contract with the Department of Corrections, to "open and photocopy [his] legal content, including photographs, before sending the photo copies to plaintiff." (*Id.* at 26-27.) He also alleges that non-party the United States Postal Service is part of the conspiracy to photocopy his mail. (*Id* at 27.) Finally, he asserts that Wetzel, Ferguson and Sipple were motivated to destroy his property in order to sell the same items back to him. (*Id.* at 28.)

## II. STANDARD OF REVIEW

As the Court previously granted Miller leave to proceed *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the AC if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same

---

[2] Miller also asserts that had "legal materials from the Coal Township lawsuit, from the Dallas litigation and the Huntingdon litigation and experiences." (*Id* at 16.) Although Miller does specifically so state, the Court assumes that these materials were destroyed in the move.

3

standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the AC contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory allegations do not suffice. *Id* As Miller is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III. DISCUSSION

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v Atkins*, 487 U.S. 42, 48 (1988). For the following reasons, Miller has again failed to state plausible § 1983 claims.

### A. Property Loss Claims

The Court previously determined that the destruction of Miller's non-legal, non-religious personal property did not provide a basis for a claim under the Eighth or Fourteenth Amendments. (ECF No. 9 at 5-7.) In the AC, Miller attempts to reframe his claims based upon the loss of his manuscript (ECF No. 11 at 16-18), his art supplies and finished works of art (*id.* at 18-19), and his historical family photographs (*id.* at 19-21) as First Amendment free expression claims, rather than Fourteenth Amendment due process claims as originally pled. Regardless of the label Miller has attached, it remains that his claim is based on the destruction of personal property. While the Court does not question that the property had significant artistic, historic, or literary value, the fact that it has such value does not change its characterization as personal property. *Accord Blake v JPay*, Civ. A. No. 18-3146, 2019 WL 3858158, at *2 (D. Kan. Aug. 16, 2019) (destruction of prisoner's manuscripts treated as loss of personal property; due process

4

claim rejected as not plausible where adequate post-deprivation remedy existed); *McFadden v. Mail Room Staff*, Civ. A. No. 13-1029, 2014 WL 4924306, at *3 (M.D.N.C. Sept. 30, 2014) (prisoner failed to state a cognizable First Amendment claim under § 1983 based on destruction of manuscript by prison mailroom because, although prisoners enjoy a protected First Amendment interest in sending and receiving mail, he possessed a meaningful post-deprivation remedy for loss of his personal property). It is clear that the First Amendment protects the right to receive and disseminate ideas. *Red Lion Broadcasting Co v. FCC*, 395 U.S. 367 (1969); *Stanley v Georgia*, 394 U.S. 557, 564 (1969). It is equally clear that incarceration does not strip one of his First Amendment rights, and that the guarantees of that constitutional provision are applicable to states under the Fourteenth Amendment. *Cruz v. Beto*, 405 U.S. 319 (1972); *Long v Parker*, 390 F.2d 816 (3rd Cir. 1968). However, the destruction of a prisoner's personal property does not implicate the First Amendment merely because the destroyed property is allegedly the product of expression. Accordingly, Miller's First Amendment property loss claims involving his manuscript, art, and photographs are not plausible and are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Having already afforded Miller an opportunity to amend his property loss claim, and it appearing that any further attempts would be futile, the claims involving his manuscript, art, and photographs are dismissed with prejudice.

The only additional personal property related allegation Miller includes in the AC that he did not allege in the original pleading concerns his orthopedic shoes. He specifically asserts that his orthopedic shoes are a life necessity and that all Defendants acted with deliberate indifference to his health and safety by losing or destroying them. (*Id.* at 21-22.)

Conditions of confinement violate the Eighth Amendment's prohibition on cruel and unusual punishment if they satisfy two criteria. First, the conditions "must be, objectively,

5

sufficiently serious" such that a "prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citations and internal quotation marks omitted). Second, the official responsible for the challenged conditions must exhibit a "sufficiently culpable state of mind," which "[i]n prison-conditions cases . . . is one of deliberate indifference to inmate health or safety." *Id.* In most cases, the destruction of property does not equate to a sufficiently serious deprivation that would give rise to a claim under the Eighth Amendment. *See Payne v. Duncan*, Civ. A. No. 15-1010, 2017 WL 542032, at *9 (M.D. Pa. Feb. 9, 2017) ("Plaintiff's claim for destruction of property under the Eighth Amendment does not constitute a deprivation of life's necessities."), *aff'd*, 692 F. App'x 680 (3d Cir. 2017); *Dean v. Folino*, Civ. A. No. 11-525, 2011 WL 4527352, at *3 (W.D. Pa. Aug. 22, 2011) (allegations regarding destruction of property did not state Eighth Amendment claim), *report and recommendation adopted*, 2011 WL 4502869 (W.D. Pa. Sept. 28, 2011).

The need for orthopedic shoes has, however, been held to be serious medical need for purposes of stating a plausible claim of deliberate indifference to a serious medical need. *See Saunders v. Horn*, 959 F. Supp. 689, 694 (E.D. Pa. 1996), *report and recommendation adopted*, 960 F. Supp. 893 (E.D. Pa. 1997) (holding that where plaintiff alleged that a physician prescribed orthopedic shoes he stated a plausible claim that he had a serious medical need). "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to

6

provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Furthermore, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

For the purposes of § 1915 screening, Miller's claim based on the destruction of his orthopedic shoes is not plausible as alleged. First, to constitute a medical necessity, the need for his orthopedic shoes must have been prescribed by a physician. Miller has not alleged this element and, accordingly, the loss of his shoes cannot constitute a denial of treatment. Second, Miller has also failed to allege which Defendants were personally involved in the deprivation. Rather, he alleges in only general terms that "defendants had a 'sufficiently culpable state of mind'" and that "[a]ll defendants knew and should have known that what they were doing intentionally [] could violate plaintiff's protected rights." (ECF No. 5 at 21-22.) Since Miller does not identify a specific Defendant - - even in terms of an unknown John Doe who participated in the complained of conduct — he cannot allege a plausible claim based on any Defendant's personal involvement in the alleged wrong or any Defendants' possession of a sufficiently culpable state of mind. *Accord, Gadson v. John Doe #1, Corr Officer*, Civ. A. No. 15-40, 2016 WL 3469383, at *4 (W.D. Pa. May 24, 2016), *report and recommendation adopted sub nom. Gadson v. Doe*, Civ. A. No. 15-40, 2016 WL 3546056 (W.D. Pa. June 21, 2016) (dismissing Eighth Amendment claim with prejudice holding that, "[t]aking all of the allegations in the complaint as true, Plaintiff has failed to allege the personal involvement of Defendants Weidlich and Burk in the alleged confiscation of his orthopedic shoes or orthotic heel lift inserts.")

Accordingly, the Court will dismiss Miller's claim involving the loss or destruction of his orthopedic shoes without prejudice and will afford him an additional opportunity to amend his pleading to attempt to cure the identified defects.

### B. First and Fourteenth Amendment Claims — Loss of Religious Items

Miller is also pursuing a First and Fourteenth Amendment due process claim based on the loss and/or destruction of his religious property. Specifically, he contends that his kufis, prayer rug, religious books and posters were deliberately destroyed. He asserts that Defendants Wetzel, Ferguson and Sipple had a duty to stop the C.E.R.T. John Doe defendants.

The Supreme Court has recognized that the First Amendment guarantees that all prisoners must be afforded reasonable opportunities to exercise their religious freedom. *Cruz v Beto*, 405 U.S. 319, 322 n. 2 (1972); *see also O'Lone v Shabazz*, 482 U.S. 342, 348 (1987) ("Inmates clearly retain protections afforded by the First Amendment, . . . including its directive that no law shall prohibit the free exercise of religion.") (citations omitted). In order to state a plausible Free Exercise claim, a plaintiff must allege a "substantial burden" on the exercise. *Thomas v Review Bd.*, 450 U.S. 707, 718 (1981); *Wisconsin v Yoder*, 406 U.S. 205, 218 (1972). Stated another way, the free exercise inquiry asks whether government has placed a substantial burden on the observation of a central religious belief or practice and, if so, whether a compelling governmental interest justifies the burden. *Hernandez v. Comm'r of Internal Revenue*, 490 U.S. 680, 699 (1989) (internal citations omitted). In addition, to state a denial of religious freedom claim in this instance, Miller must allege that the destruction of his property was not reasonably related to a legitimate, penological interest. *O'Lone*, 482 U.S. at 349-50; *Turner v. Safley*, 482 U.S. 78, 89 (1987).

Although Miller states Defendants Wetzel, Ferguson and Sipple had no penological justification in destroying his religious items, he does not allege how the loss of the items placed a substantial burden on the practice of his religion. Miller's bare allegations are, accordingly, insufficient to state a First Amendment free exercise claim. He does not allege that the destruction of his property restricted him from participation in prayer or why substitute copies of religious texts, prayer rugs or kufis, other than the destroyed personal property, would not suffice. Miller also fails to explain how the destruction of his decorative wall posters, even if they had religious content, imposed a substantial burden on his free exercise of his religion. In other words, Miller does not indicate how the destruction of his property actually prevented him from practicing his faith and does he even assert that it placed a substantial burden on the observation of a central religious practice. While troubling, the allegation of wrongful conduct does not rise to the level of a violation of constitutional dimension merely because the destroyed personal property was used by Miller for religious observance. As Miller has post-deprivation remedies to recover the value of his lost property, the Court will dismiss his First and Fourteenth Amendment claim for failure to state a claim upon which relief may be granted. *See Spencer v. Bush*, 543 F. App'x 209, 213 (3d Cir. 2013) ("'[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available.'" (quoting *Hudson v. Palmer*, 468 U.S. 517, 533 (1984))); *Shakur v. Coelho*, 421 F. App'x 132, 135 (3d Cir. 2011) (per curiam) (explaining that the Pennsylvania Tort Claims Act provides an adequate remedy for a willful deprivation of property).

## C. Legal Property Claim

Miller's next claim involves legal property. He alleges that legal property he was apparently preparing for submission to "District Attorney Mr. Krasner and Ms. Cummings" — which the Court assumes refers to the Philadelphia District Attorney's conviction integrity unit — was destroyed and cannot be replaced. (ECF No. 11 at 25.)

Miller's allegation attempts to state a denial of access to the courts claim. "Under the First and Fourteenth Amendments, prisoners retain a right of access to the courts." *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008). "Where prisoners assert that defendants' actions have inhibited their opportunity to present a past legal claim, they must show (1) that they suffered an 'actual injury'—that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit." *Id.* (quoting *Christopher v Harbury*, 536 U.S. 403, 415 (2002)). "[T]he underlying cause of action, . . . is an element that must be described in the complaint." *Christopher*, 536 U.S. at 415.

Miller has not stated a plausible claim for denial of access to the courts. His assertion that the destroyed property was being prepared for submission to the District Attorney's conviction integrity unit is insufficient to state an access to the courts claim since Miller's possibly gaining relief through this process constitutes mere speculation and does not constitute a claim made to a court. He has failed to allege that he lost an **actual** opportunity to pursue a nonfrivolous or arguable underlying court claim. Furthermore, while the constitutional right of access to the courts is an aspect of the First Amendment right to petition the government for redress of grievances, *see Bill Johnson's Restaurants, Inc v NLRB*, 461 U.S. 731, 741 (1983), there appears to be no specific constitutional right to seek discretionary prosecutorial

reexamination of charging decisions. *See Wayte v. United States*, 470 U.S. 598, 607 (1985) (holding that prosecutors are granted broad discretion in charging decisions so long as the decision is not based on an unjustifiable standard such as race, religion, or other arbitrary classification); *Minnesota State Bd. for Community Colleges v. Knight*, 465 U.S. 271, 285 (1984) ("Nothing in the First Amendment or in . . . case law interpreting it suggests that the rights to speak, associate, and petition require government policymakers to listen or respond to individuals communications."). Therefore, this portion of Miller's legal property claim will also be dismissed with prejudice.

### D. Claim Involving Legal Mail

Miller separately asserts a claim that attorney/client material was opened and copied by Defendants Wetzel, Ferguson and Sipple in conspiracy with Defendant Smart. (*Id.* at 26.) This claim does not appear to be connected with the transfer of prisoners from SCI Graterford to SCI Phoenix.

Miller's allegations concerning the opening of his legal mail will also be dismissed, but with leave to refile the claim in a separate civil action. The United States Court of Appeals for the Third Circuit has explained that prisoners "do not forfeit their First Amendment right to use of the mails" and that a "pattern and practice of opening properly marked incoming [legal] mail outside an inmate's presence infringes communication protected by the right to free speech." *Bieregu v Reno*, 59 F.3d 1445, 1452 (3d Cir. 1995), *abrogated in part by Oliver v. Fauver*, 118 F.3d 175 (3d Cir. 1997); *see also Taylor v. Oney*, 196 F. App'x. 126, 128 (3d Cir. 2006) (reaffirming holding in *Bieregu* that "prison officials impinge upon the First Amendment rights of prisoners when they open prisoners' legal mail outside the presence of the addressee prisoner"). To state a First Amendment claim for interference with a prisoner's legal mail, a

11

plaintiff must allege that the interference was done according to a "pattern and practice." *Jones v. Brown*, 461 F.3d 353, 359 (3d Cir. 2006) ("A state pattern and practice . . . of opening legal mail outside the presence of the addressee inmate . . . impinges upon the inmate's right to freedom of speech."). A prisoner may allege that actions were taken pursuant to a pattern or practice without the existence of a "blanket policy." *See, e.g. id.* (distinguishing between "a pattern and practice" and an "explicit policy"). Prisoners need not allege or prove any "actual injury" beyond direct injury to their First Amendment right to use the mails. *Taylor*, 196 F. App'x at 128. Courts have found that mere isolated incidents of interference without evidence of an improper motive, are insufficient to establish a First Amendment violation. *See, e.g Nixon v. Sec'y Pa. Dep't of Corr.*, 501 F. App'x 176, 178 (3d Cir. 2012) ("[T]he District Court correctly determined that Nixon's claim alleging a single, isolated interference with his personal mail was insufficient to constitute a first Amendment violation."); *Beese v. Liebe*, 51 F. App'x. 979, 981 (7th Cir. 2002) (dismissing First Amendment Claim based on allegations that four pieces of legal mail had been opened outside of inmate's presence, since the inmate presented no evidence that his legal mail had been intentionally opened, and where the inmate merely speculated that the prison official intended to do so); *Gardner v. Howard*, 109 F.3d 427, 420-31 (8th Cir. 1997).

While Miller generally alleges interference with his legal mail, his Complaint fails to set forth specific factual averments describing how any named Defendant was personally involved in the interference. Other than a bald allegation of a conspiracy, he also makes no allegation that the interference was part of a pattern and practice. Without at least a modicum of factual specificity on these points, the Court must conclude that Miller has failed to state a plausible claim of interference with legal mail under the First Amendment. *See Taylor*, 196 F. App'x at 128 (stating that the inmate must allege the "personal involvement on the part of the Defendants

12

in the alleged pattern and practice of opening his mail"). The Court cannot, however, state that Miller can never successfully state a plausible First Amendment claim. Accordingly, this claim will be dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

Because the legal mail claim is unrelated to the balance of his other claims, the claim is subject to severance under Federal Rule of Civil Procedure 21. Rule 20 allows a plaintiff to join multiple defendants in one action if: (a) "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences"; and (b) "any question of law or fact common to all defendants will arise in the action." "For courts applying Rule 20 and related rules, 'the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.'" *Hagan v. Rogers*, 570 F.3d 146, 153 (3d Cir. 2009) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966)).

"But this application, however liberal, is not a license to join unrelated claims and defendants in one lawsuit." *McKinney v. Prosecutor's Office*, Civ. A. No. 13-2553, 2014 WL 2574414, at *14 (D.N.J. June 4, 2014) (internal quotations omitted). "Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2." *George v Smith*, 507 F.3d 605, 607 (7th Cir. 2007). Indeed, "[t]he courts[] . . . have frowned on prisoners' attempts to lump together their multifarious grievances about life in a single prison, let alone multiple prisons." *McKinney*, 2014 WL 2574414, at *15. To remedy a misjoinder, a Court may add or drop a party or sever any claims. Fed. R. Civ. P. 21. "A district court has broad discretion in deciding whether to

sever a party pursuant to Federal Rule of Civil Procedure 21." *Boyer v. Johnson Matthey, Inc*, Civ. A. No. 02-8382, 2004 WL 835082, at *1 (E.D. Pa. Apr. 16, 2004).

Here, the factual allegations concerning the opening of legal mail presents a distinct set of events. For this reason, Miller will be granted leave to reassert the claim in a separate lawsuit.

V.      CONCLUSION

For the foregoing reasons, the Court will dismiss Miller's Complaint for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). *See Hernandez v Corr. Emergency Response Team*, 771 F. App'x 143 (3d Cir. 2019) (per curiam) (affirming dismissal of amended complaint where inmate "alleged in his complaint that when he and all other prisoners were moved from SCI Graterford to SCI Phoenix, many prisoners' possessions were destroyed or damaged, including his legal materials"). However, Miller will be permitted to file a second amended complaint, limited to his claim involving the loss or destruction of his orthopedic shoes. He will also be granted leave to reassert the claim concerning the opening of his legal mail outside of his presence in a separate lawsuit. An appropriate Order follows.

BY THE COURT:

*Joel Slomsky*
JOEL H. SLOMSKY, J.